UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANDREW NATHAN ACKLEY, | CASE NO. C13-432-RSM |
| Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| v. | |
| SECURITY LIFE INSURANCE COMPANY OF AMERICA, a Minnesota Corporation, and SECURITY AMERICAN FINANCIAL ENTERPRISES, INC., a Minnesota Corporation, | |
| Defendants. | |

## I.     INTRODUCTION

This matter comes before the Court on Defendant Security Life Insurance of America, Inc.'s ("SLICA") Motion to Dismiss the Third Amended Class Action Complaint ("TAC"). Dkt. # 25. For the reasons that follow, the motion shall be GRANTED.

ORDER GRANTING MOTION TO DISMISS - 1

## II.     BACKGROUND

Plaintiff Andrew Nathan Ackley brings claims on behalf of himself and other Washington residents who purchased dental insurance plans from SLICA between 2009 and 2012. Dkt. # 22, ¶ 1.1. Ackley alleges that SLICA sold dental insurance policies that were not filed lawfully with the Washington State Office of Insurance Commissioner ("OIC"), and that the policies were not approved for sale within the state. *Id.* at ¶ 1.3. Ackley asserts that the policies were terminated at the request of the OIC beginning in January 2012 due to SLICA's continued noncompliance with Washington law. *See id.* at ¶ 1.4.

In the Court's previous Order on Defendants' first motion to dismiss (Dkt. # 21), the Court dismissed Mr. Ackley's Insurance Fair Conduct Act claim with prejudice, dismissed Defendant Security American Financial Enterprises, Inc. from the action for lack of personal jurisdiction, and allowed Mr. Ackley a fourth opportunity to amend his breach of contract claim. *Id.* Ackley timely filed the TAC, which includes additional allegations to support the breach of contract claim as well as his alleged violation of the Washington Consumer Protection Act ("CPA"). Defendant SLICA now seeks dismissal of the TAC in its entirety. It contends that (1) Ackley lacks standing to represent putative members of the class who purchased SLICA group dental insurance policies, as opposed to individual SLICA dental insurance policies; (2) Ackley lacks standing for failing to sufficiently plead injury in fact; (3) the statute of limitations bars any contract claims originating before 2007 and any CPA claims originating before 2009; and (4) the contract and CPA claims are insufficiently pled. Having considered the motion, the TAC, and the related briefing, the Court concludes that the TAC fails to plead cognizable breach of contract and CPA claims. Because the TAC may be dismissed on that basis alone, the Court declines to address SLICA's other enumerated grounds for dismissal.

## III.     DISCUSSION

**A.  Legal Standard Under Rule 12(b)(6)**

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must determine whether the plaintiff has alleged sufficient facts to state a claim for relief which is "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556).  In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  The Court is not, however, bound to accept the plaintiff's legal conclusions. *Iqbal*, 129 S. Ct. at 1949-50.  While detailed factual allegations are not necessary, the plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In addition, although the court must accept as true all well-pled allegations within the complaint, the court need not accept allegations that are contradicted by "matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

1. <u>Request for Judicial Notice</u>

To support the motion to dismiss, Defendant requests that the Court take judicial notice of the certificate and policy documents underlying the insurance plan referenced by the TAC. Generally, courts may only consider the complaint and any materials properly submitted with it when ruling on a Rule 12(b)(6) motion. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). Courts may, however, take judicial notice of "documents in situations where the

1 complaint necessarily relies upon a document or the contents of the document are alleged in the
2 complaint, the document's authenticity is not in question, and there are no disputed issues as to
3 the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).
4 In addition, the court may take judicial notice of a fact that "is not subject to reasonable dispute
5 because it can be accurately and readily determined from sources whose accuracy cannot
6 reasonably be questioned." Fed. R. Evid. 201. Such materials may be considered without
7 converting the motion into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th
8 Cir. 1994).

9 Here, Plaintiff does not challenge the authenticity or relevance of the policy documents,
10 or other documents incorporated by reference in the TAC that were submitted by SLICA. Thus,
11 the documents are properly subject to judicial notice.

12

**B. Breach of Contract Claim**

14 Four central theories underlie the TAC's breach of contract allegations: (1) the SLICA
15 policies were void because the OIC found certain provisions of the policies not in compliance
16 with Washington law; (2) the premiums charged were excessive because the policies were not in
17 compliance with Washington law; (3) the policies imposed excessive waiting periods in violation
18 of Washington law; and (4) putative plaintiffs lost the "benefit of their bargains" when policies
19 were non-renewed. After thoroughly considering the TAC, the Court finds that none of the
20 theories raised or the facts alleged in support are sufficient to state a cognizable breach of
21 contract claim against SLICA.

22

23

24

1. <u>Void Policy Theory</u>

Ackley's theory that the SLICA policies were void under Washington law is directly contradicted by RCW 48.18.510 and the SLICA policy at issue. Washington's so-called insurance "savings" clause, RCW 48.18.510, states as follows:

> Any insurance policy, rider, or endorsement hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code.

*Id.* Similarly, the relevant SLICA policy provision provides that "[a]ny provision in this Policy, which, on its Effective Date, is in conflict with the laws of the state in which the Policy was delivered or issued for delivery, is considered amended to conform to the applicable requirements of such state." Dkt. # 25-3, Coig 2d Decl., Ex. B at 2. Although the TAC does not directly challenge any specific provision of the policy as being invalid, if it did, the Court would be required to construe the challenged provision as if it were in compliance with Washington law. That is the mandate of RCW 48.18.510. *Treves v. Union Sec. Ins. Co., LLC*, C12-1337RAJ, 2014 WL 325149 (W.D. Wash. Jan. 29, 2014) ("[the] law mandates that the court construe the Plan as if it contained no unlawful . . . clause").

Given the statute, Ackley's contention that he purchased an inherently void (or "void *ab initio*") insurance policy is incorrect. If he had filed a claim for benefits that implicated a non-compliant policy provision, the provision would have to be construed as if it was compliant and benefits provided accordingly. That the OIC may have determined that certain provisions violated Washington law has no bearing on whether a SLICA policy holder could have made a claim for benefits and had those benefits provided in accordance with Washington law. Importantly, the TAC makes no allegations that any putative plaintiff made a claim for benefits

that SLICA denied. In other words, the TAC fails to allege that plaintiffs were denied any specific benefits. Thus, Ackley's "void *ab initio*" theory fails to support a cognizable breach of contract claim; it is both speculative and implausible, and contrary to governing law.

2. <u>Excessive Premium Theory</u>

The TAC alleges that SLICA "charged premiums in excess of industry and regulatory standards in connection with benefits and coverage actually provided" (Dkt. # 22, ¶ 1.4). Ackley's excessive premium theory appears to be grounded in the assumption that because the policies were void, plaintiffs paid more than the policies were actually worth. *See* Dkt. # 26, p. 20 ("Charging premiums for unlawful (unapproved) policies is also by definition excessive because a contract subject to termination (non-renewal) due to its illegality, or its state of being unlawful, is inherently worth less than a legal or lawful contract.").

Ackley's theory rests on the flawed—and hypothetical—assumption that had a claim been made under the policy, SLICA would or could not have provided benefits in accordance with Washington law. But as discussed above, the policies were not "void." If SLICA policy holders could make claims and have benefits paid under SLICA's policies, there is no reason to assume that SLICA customers paid higher premiums for SLICA dental plans than they would have paid for other provider plans that provided the same benefits. The TAC asserts no facts concerning how much plaintiffs paid for premiums, it identifies no specific industry standard or regulation that was violated by charging the "excessive" rate, nor does it allege facts to support the conclusion that plaintiffs paid more for SLICA policies than they would have paid for a comparable dental plan. Therefore, even ignoring Ackley's specious void *ab initio* theory, the TAC's excessive premium allegations fall far short of supplying a cognizable and factually supported claim for relief.

3. Excessive Waiting Period Theory

The TAC alleges that SLICA breached its contract by imposing waiting periods that exceeded the maximum waiting periods permitted under Washington law. *See* Dkt. # 22, ¶ 1.4. This allegation is again contradicted by the relevant Washington statutes. The Washington Insurance Reform Act, RCW 48.43, imposes maximum pre-existing condition waiting periods for "health plans" and "health benefit plans." *See* RCW 48.43.012, .015, and .025. As pointed out by SLICA however, under RCW 48.43.005(26)(k), dental-only insurance policies are specifically excluded from the definition of "health plans" or "health benefits plans."

Ackley does not address the import of RCW 48.43 in his response brief. Instead, he states "[n]o evidence need be submitted to support the contention that SLICA's waiting periods exceeded those allowed under Washington law." Dkt. # 26, p. 21. While it is technically correct that no evidence need be submitted at this stage, the TAC must allege sufficient factual content from which the Court could infer that there is some merit to its conclusions. Both the TAC and response brief fail to identify any Washington law that SLICA may have violated by imposing waiting periods. Moreover, in failing to respond to SLICA's argument that the relevant statutory law exempts the policies at issue in this case, Ackley has effectively conceded that the statutory waiting period maximums do not apply to SLICA's dental-only policies.

4. Lost Benefit Theory

The TAC alleges that SLICA's dental policies provided "illusory" benefits and that purchasers of the SLICA policies were denied "the benefit of their bargains" when the policies were non-renewed. *See* Dkt. # , ¶¶ 1.5, 1.6, 5.4, 5.6. SLICA argues that these conclusory allegations are belied by the documents referenced in the TAC. It contends that (1) SLICA was statutorily and contractually permitted to not renew the policies and it followed the contractually proper procedure for non-renewal; (2) a letter specifically referenced in the TAC shows that the

1 policies were non-renewed at the OIC's request, and not because SLICA sought to terminate the
2 policies before insureds could make a claim for benefits; and (3) the TAC is plainly incorrect
3 where it alleges that SLICA provided illusory benefits due to excessive waiting periods because
4 the actual policies show that many services were not subject to any waiting periods whatsoever.

5      Having considered the judicially noticeable documents and the documents incorporated
6 by reference in the TAC, the Court concludes that the allegations of breach of contract and bad
7 faith related to "illusory benefits" are conclusory, unsubstantiated, and implausible given the
8 contractual terms of the policy. First, SLICA's insurance certificate and insurance policies could
9 be terminated at any time for any reason so long as SLICA provided written notice to the policy
10 holder at least 31 days in advance of any premium due date. *See* Dkt. # 25-2 (Coig 2d Decl., Ex.
11 A at C1); Dkt. # 25-3 (Coig 2d Decl., Ex. B at 2). In addition, Washington law imposes no
12 continuous coverage requirement on dental-only policies. See RCW 48.43.038 in conjunction
13 with RCW 48.43.005(26)(k) (exempting dental-only policies from statutory provisions
14 governing health plans and health benefit plans). Thus, SLICA's policy provisions and
15 Washington law undermine the TAC's allegations that insureds had a right to continuous
16 coverage and that they specifically bargained for policies that could not be terminated.

17      Second, the letter cited by Ackley at paragraph 5.8 of the TAC shows that SLICA was
18 told by OIC that it must non-renew existing policies on their next renewal date. *See* Dkt. # 25-5
19 (Coig 2d Decl., Ex. D). The letter undermines the TAC's allegations that non-renewals were
20 timed to occur at the expiration of policy waiting periods. Further, the TAC offers no factual
21 allegations from which the Court could infer that any individual or group policy was non-
22 renewed for a reason other than at the OIC's insistence.

23      Third, SLICA's dental policy coverage schedule states that the policies provided benefits
24 that were not subject to waiting periods or provided shorter waiting periods that expired prior to

ORDER GRANTING MOTION TO DISMISS - 8

when SLICA non-renewed the policies. *See* Dkt. # 25-2, p. 10 (SLICA Coverage Schedule, Coig 2d Decl., Ex. A). For example, Class A preventive services that included two routine dental exams annually were not subject to a waiting period and Class B basic services such as extractions and diagnostic x-rays were subject to a six month waiting period. *See id.* The SLICA dental policy coverage schedule directly contradicts Ackley's allegation that "SLICA's contracts offered no benefit to the insureds because benefits subject to waiting periods beyond twelve months are illusory" (Dkt. # 22, ¶ 6.7(k)) and that SLICA timed the non-renewal of his policy to occur before any benefits would have been provided. *See id.* at ¶¶ 5.1, 5.5-5.6 (stating that even though Ackley applied for benefits in 2009 and had his policy terminated in 2012, he "never received SLICA's promised benefits despite dutifully paying the premiums and allowing the requisite waiting periods to elapse"). Ackley does not directly respond to SLICA's arguments and states only that "[e]ach contract sold by SLICA contained waiting periods of shifting length[.]" Dkt. # 26, p. 23. Given that statement, Ackley appears to concede that the policies contained different waiting periods, or no waiting periods as in the case of Class A services, for different classes of services covered.

In sum, the allegations of the TAC are generally either contradicted by statutory law or by SLICA's contractual provisions. The Court can identify no contractual provision that SLICA breached to support a cognizable breach of contract claim. Nor can the Court discern any actions taken in bad faith by SLICA in providing benefits to its insureds per the provisions of the contract. Accordingly, the breach of contract claim will be dismissed.

**C. CPA Claim**

To state a claim for violation of the CPA, a plaintiff must allege (1) an unfair or deceptive trade practice; (2) that occurs in trade or commerce; (3) that has an impact on the public interest; (4) that causes the plaintiff injury to her business or property; and (5) there is a causal link

between the unfair or deceptive act and the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986). Here, Ackley's CPA claim fails at the very least because the TAC fails to allege a concrete injury.

To satisfy the causation or injury element of the CPA, "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 170 P.3d 10, 22 (Wash. 2007). While "[t]he injury involved need not be great, or even quantifiable, it must be an injury to business or property." *Ambach v. French*, 216 P.3d 405, 407 (Wash. 2009) (en banc) (internal quotation marks and citations omitted). As discussed above, the TAC does not allege that any potential plaintiff made a claim for benefits and was denied benefits in violation of Washington law. And SLICA's policy documents show, contrary to the TAC, that the dental insurance policies provided some classes of services without a waiting period.

Further, the TAC does not allege that SLICA issued non-renewal notices to its insureds in violation of the terms dictated by the insurance policies. The TAC also fails to allege that Ackley, or any other plaintiff, suffered any particular harm by having the policy non-renewed by SLICA. Ackley assumes that he was harmed by paying an insurance premium for an insurance plan that did not comply with Washington law, but there are no particularized factual allegations to support that theory, and the theory itself is contrary to Washington law and SLICA's policies. As noted above, if SLICA had denied a claim made under its policy for a reason not in accordance with Washington law, the policy would have been construed as if it were compliant. Because the TAC fails to identify an actual and particularized injury suffered by any potential plaintiff, the TAC fails to allege a prima facie claim for violation of the CPA.

## IV. CONCLUSION

Ackley has filed four iterations of his complaint. He filed the first Class Action Complaint on February 4, 2013, the First Amended Class Action Complaint on March 26, 2013, the Second Amended Class Action Complaint on March 26, 2013, and finally, the Third Amended Class Action Complaint on September 30, 2013. Having had four opportunities to state a cognizable claim for relief, the Court finds that dismissal with prejudice is warranted. The Court has broad discretion to refuse leave to amend where it has already given a plaintiff an opportunity to remedy a defective complaint. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008). Neither the TAC nor Ackley's responsive briefing indicates that a fifth opportunity to amend would remedy the defects noted by the Court in both the prior and current Orders. Thus, having considered the motion, the response and reply thereto, the declarations and attached exhibits, and the balance of the file, the Court hereby finds and ORDERS:

(1) Defendant's Motion to Dismiss Third Amended Class Action Complaint (Dkt. # 25) is GRANTED;

(2) The Clerk is directed to enter judgment accordingly.

Dated this 31st day of July 2014.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE